WO　　　　　　　　IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff,　　　)
　　　　　　　　　　　　　　　　)
　vs.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
GUILLERMO MURGIA,　　　　　　　 )
　　　　　　　　　　　　　　　　)　　No. 3:10-cr-0076-01-HRH
　　　　　　　　　Defendant.　　　)
_____)

O R D E R

Motion for Habeas Corpus Relief
and Interim Conditional Release

Defendant Guillermo Murgia moves for habeas corpus relief and interim conditional release.[1] This motion is opposed, and plaintiff the United States of America cross-moves to dismiss Murgia's habeas petition.[2] The cross-motion is opposed by Murgia.[3] Oral argument was not requested and is not deemed necessary.

---

[1] Docket No. 162.

[2] Docket No. 164.

[3] Docket No. 166.

-1-

Background

Murgia was convicted of a drug conspiracy and was originally sentenced to 135 months.[4] On June 16, 2015, the court reduced Murgia's sentence to 120 months.[5] Murgia represents that he is presently in prerelease custody and is being supervised on electronic monitoring in Anchorage, Alaska. Plaintiff offers evidence that Murgia is presently in the custody of the Residential Reentry Management office in Seattle, Washington.[6] Murgia is currently scheduled to be released from custody on June 17, 2019.

Pursuant to 28 U.S.C. § 2241, Murgia now moves for habeas relief, arguing that he is entitled to have his good time credits calculated under the First Step Act's amendment to 18 U.S.C. § 3624(b). Murgia contends that under such a calculation his release date would have been April 8, 2019.

Discussion

As an initial matter, Murgia should have filed a habeas petition as an independent civil suit rather than filing a motion in his underlying criminal case. See Riddle v. Dyche, 262 U.S. 333, 335-336 (1923) ("[t]he writ of habeas corpus is not a proceeding in the original criminal prosecution, but an independent civil suit"). Secondly, "petitions that challenge the manner, location, or conditions of a sentence's execution[,]" such as Murgia has brought

---

[4]Docket No. 106.

[5]Docket No. 158.

[6]Exhibit 1, Opposition to Motion for Interim and Habeas Relief, Docket No. 164.

here, "must be brought pursuant to § 2241 in the custodial court." Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000). The only evidence before the court is that Murgia is in custody in Seattle, Washington, which means his § 2241 petition should have been brought in the Western District of Washington, not the District of Alaska. Although Murgia contends that he is currently in Anchorage, he has offered no evidence to support this contention. Moreover, "the proper respondent" to a habeas petition challenging a petitioner's present physical confinement "is the warden of the facility where the prisoner is being held[.]" Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Even assuming Murgia is in Anchorage as he contends, the United States is not the proper respondent. For all of these reasons, Murgia's habeas motion must be denied. But even assuming that Murgia's habeas motion was properly before this court,[7] the court would deny the motion for the reasons set out below.

Prior to December 21, 2018, Section 3624(b), the good time credit statute, provided that "[a] federal prisoner may receive 'up to fifty-four days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term,' subject

---

[7]The court is mindful "that habeas petitioners [must] exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). "This exhaustion requirement is subject to waiver in § 2241 cases because it is not a jurisdictional prerequisite." Id. (citation omitted). But, "exhaustion can be waived 'if pursuing those [administrative] remedies would be futile.'" Id. (quoting Fraley v. U.S. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)). The court believes that exhaustion would be futile in this instance because the BOP has taken the position that the First Step Act amendment to the good time credit statute did not take effect immediately.

to the BOP's determination that 'during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.'" Pacheco-Camacho v. Hood, 272 F.3d 1266, 1267 (9th Cir. 2001) (quoting 18 U.S.C. § 3624(b)(1)). Although the statute made reference to 54 days of good time credit, for years, the BOP interpreted the good time credit statute to permit a maximum credit of 47 days per year, rather than 54 days per year. This was because the BOP counted the 54 days against time actually served, as opposed to the sentence imposed. Section 102(b) of the First Step Act "fixes" this problem by amending Section 3624(b)(1) "by striking ', beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term,' and inserting 'of up to 54 days for each year of the prisoner's sentence imposed by the court[.]'"[8] In other words, the First Step Act amendment clarifies that the 54 days should be calculated based on the sentence imposed by the court, not the time actually served.

Murgia argues that this amendment to the good time credit statute became effective on the date the First Step Act was signed into law, December 21, 2018. Plaintiff disagrees and argues that there is a delayed effective date for this amendment.

"'In the absence of an express provision in the statute itself, an act takes effect on the date of its enactment.'" United States v. Shaffer, 789 F.2d 682, 686 (9th Cir. 1986) (quoting United States v. Clizer, 464 F.2d 121, 123 n.2 (9th Cir. 1972)). Determining whether there is an express provision in the First Step Act that applies to the good time credit amendment

---

[8]Appendix A at 43-44, Motion for Habeas Relief [etc.], Docket No. 162.

is a question of statutory interpretation. "'The preeminent canon of statutory interpretation requires [the court] to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, [the court's] inquiry begins with the statutory text, and ends there as well if the text is unambiguous.'" Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951 (9th Cir. 2009) (quoting McDonald v. Sun Oil Co., 548 F.3d 774, 780 (9th Cir. 2008)).

Title 1 of the First Step Act, entitled "Recidivism Reduction," consists of seven sections.[9] The amendment at issue here is found in Section 102 of Title 1. More specifically, the amendment at issue here is found in Section 102(b). Section 102(b) is entitled "Prerelease Custody" and it has three subsections: 1) In General, 2) Effective Date, and 3) Applicability.[10] Subsection 102(b)(1) in turn has two additional subsections. Subsection 102(b)(1)(A) sets out the amendment to the good time credit statute discussed above.[11] Subsection 102(b)(1)(B) sets out the new subsection (g) being added to 18 U.S.C. § 3624.[12] Subsection (g) is entitled "Prerelease Custody or Supervised Release for Risk and Needs Assessment System Participants."[13] Subsection (g) involves a new recidivism program, the

---

[9]Id. at 1-2.

[10]Id. at 43-53.

[11]Id. at 43-44.

[12]Id. at 44-52.

[13]Id. at 44.

risk and needs assessment system, and the Attorney General was given 210 days after the enactment of the First Step Act in which to release a completed risk and needs assessment system. 18 U.S.C. § 3632(a). 210 days after December 18, 2018 is July 19, 2019.

Subsection 102(b)(2), the "Effective Date" subsection, provides that "[t]he amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of this Act."[14] This language is unambiguous.[15] It plainly states that the amendments in Section 102(b) do not take effect until the Attorney General releases the risk and needs assessment system, which is due on July 19, 2019. Other district courts around the country have reached the same conclusion. See United States v. Richards, Case No. 3:05-cr-00185, 2019 WL 2008572, at *4 (M.D. Tenn. May 7, 2019) ("[a]lthough Richards argues that the effective-date provision does not apply to the good-time fix, virtually every court in the country confronted with the question has concluded that it does and that, as a result, motions seeking relief under the FSA now are premature"); United States v. Sirois, Case No. 1:11-cr-00206-JAW-2, 2019 WL 1923632, at *2 (D. Me. April 30, 2019) (citation omitted) ("the good time credit provisions of the First Step Act are not yet effective" because "Section 102(b)(2) of the Act specifically provides that the amendments made in subsection 102(b) of the Act take effect only when

---

[14]Appendix A at 52-53, Motion for Habeas Corpus Relief [etc.], Docket No. 162.

[15]Section 102 is hard to read because of the use of quotation marks to set off the language being amended or added. But carefully read, it is not ambiguous.

the Attorney General completes the 'risk and needs assessment system' required by Section 101(a) of the Act"); Crittendon v. White, Case No. 1:19-cv-669, 2019 WL 1896501, at *1 (M.D. Pa. April 29, 2019) (good time credit amendment does "not take effect until the Attorney General completes the 'risk and needs assessment system'"); United States v. Yates, Case No. 15-40063-01-DDC, 2019 WL 1779773, at *3 (D. Kan. April 23, 2019) ("[c]ourts have concluded that the plain language of § 102 of the First Step Act mandates the change to good-time credit calculations after the Attorney General releases the risk and needs assessment system mandated by the Act"); Matthews v. Williams, 4:19CV5182019 WL 1639776, at *2 (N.D. Ohio, April 16, 2019) (citation omitted) ("[t]he First Step Act is explicit about the effective date of the new good-time provisions[,]" which is on the date that "the Attorney Genreal completes and releases the risk and needs assessment system"); United States v. Scouten, Case No. 13-CR-20S, 2019 WL 1596881, at *1 (W.D.N.Y. April 15, 2019) (citation omitted) ("[b]y the plain terms of the Act, the provision is not effective until the Attorney General completes the risk and needs assessment system"); Johnson v. Bureau of Prisons, Case No. 4:19-cv-224-O, 2019 WL 1569360, at *1 (N.D. Tex. April 11, 2019) ("the good-time-credit change will not take effect until the attorney general completes the 'risk and needs assessment system' required to be completed within 210 days after the December 21, 2018 enactment, as provided by §§ 101(a) and 102(b)(2) of the FSA 2018"); United States v. Parrett, Case No. 01-CR-168-JPS, 2019 WL 1574815, at *1 (E.D. Wis. April 11, 2019) ("the Act's good-time provisions have not yet taken effect; before they do, the Attorney

General must complete the 'risk and needs assessment system'"); United States v. Powell, Case No. 5:11-cr-75-JMH-1, 2019 WL 1521972, at *3 (E.D. Ky. April 8, 2019) (provision amending good time credit statute "has not yet taken effect"); Roy v. United States Bureau of Prisons, Case No. 2:19-CV-59-RMP, 2019 WL 1441622, at *1 (E.D. Wash. April 1, 2019) ("[t]he good-time provisions of the First Step Act . . . did not become effective when the Act took effect on December 21, 2018").

Murgia's arguments that the effective date in Section 102(b)(2) does not apply to the good time credit amendment are unavailing. Murgia argues that it makes little sense for there to be a delayed effective date for the good-time fix because the BOP could begin calculating good time credit pursuant to the amendment immediately. While this may be correct, as noted above, the court must assume that Congress said what it meant and meant what it said, which was that the Section 102(b) amendments would not take effect until the Attorney General completes the risk and needs assessment system, which he has until July 19, 2019 to do.

Murgia also suggests that "[g]iven the apparent purpose of the legislation to rectify an earlier mistake, it seems unlikely that Congress intended the effective date to be any time other than the date of enactment." Gozlon-Peretz v. United States, 498 U.S. 395, 405 (1991). But in light of the unambiguous language in Section 102(b) of the First Step Act, Congress did apparently intend to delay the effective date of both amendments contained in Section 102(b) until the Attorney General completes the risk and needs assessment system.

Finally, Murgia argues that a delayed effective date for the amendment to the good time credit statute would violate his due process and equal protection rights.

> The law is clear that inmates are not a suspect class. As to the question of fundamental rights, the good time credit statute merely authorizes the BOP to offer prisoners the benefit of a reduced sentence in exchange for good behavior. It therefore does not implicate any fundamental right implicitly or explicitly guaranteed by the Constitution.

Perez v. Zenk, No. 04-CV-5069 (CBA), 2005 WL 990696, at *4 (E.D.N.Y. Apr. 11, 2005) (internal citations omitted). "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity and must be upheld if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Aleman v. Glickman, 217 F.3d 1191, 1200 (9th Cir. 2000) (citation omitted). The rational basis test sets a low bar. Interpipe Contracting, Inc. v. Becerra, 898 F.3d 879, 903 (9th Cir. 2018). The court "asks whether 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Fowler Packing Company, Inc. v. Lanier, 844 F.3d 809, 815 (9th Cir. 2016) (quoting F.C.C. v. Beach Comms., Inc., 508 U.S. 307, 313 (1993)).

Murgia suggests that the only conceivable reason for the delayed effective date is administrative convenience but he argues that this is not a rational basis for the delay because the BOP could easily "implement the computerized adjustment to update release dates."[16]

---

[16] Reply in Support of Motion for Habeas Corpus Relief at 12, Docket No. 166.

Plaintiff, on the other hand, argues that the BOP would have "to redo sentence computations for 183,000-plus federal inmate[s] and prepare to process the hundreds, if not thousands, of immediate release and transfer dates overnight."[17] If the court had jurisdiction of Murgia's habeas petition, it would conclude, based on what is currently before it, that there was a rational basis for Congress to delay the effective date of the amendment to the good time credit statute because it is conceivable that the BOP needed some amount of time to prepare for the change affected by the First Step Act's amendment to the good time credit statute.

Conclusion

Based on the foregoing, Murgia's motion for habeas corpus relief and interim conditional release is denied.

DATED at Anchorage, Alaska, this 22nd day of May, 2019.

/s/ H. Russel Holland
United States District Judge

---

[17]Opposition to Motion for Interim and Habeas Relief [etc.] at 13, Docket No. 164.